# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 02-1314V
(Not to be Published)

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
BRUCE ANDERSON and DONNA ANDERSON,   *
as parents and natural guardians of R.A., a minor,  *
                                      *
                   Petitioners,       *
        v.                            *
                                      *
SECRETARY OF HEALTH                   *
AND HUMAN SERVICES,                   *
                                      *
                   Respondent.        *
                                      *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

Special Master Corcoran

Filed: May 24, 2017

Attorney's Fees and Costs;
Motion for Reconsideration;
Expert Costs.

*Ronald C. Homer*, Conway Homer, P.C., Boston, MA, for Petitioners.

*Lynn E. Ricciardella*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### ORDER MODIFYING INTERIM ATTORNEY'S FEES AND COSTS AWARD[1]

On October 1, 2002, Bruce and Donna Anderson filed a petition on behalf of their minor child, R.A., seeking compensation under the National Vaccine Injury Compensation Program.[2] The Petition alleged that the measles, mumps, and rubella ("MMR") vaccine that R.A. received on December 13, 1999, resulted in a disorder of energy metabolism associated with autistic regression and multi-system dysfunction. An entitlement hearing was held on December 8-9, 2015, and I issued a decision denying compensation on November 1, 2016. ECF No. 106. Thereafter, Petitioners filed a consented Motion to Substitute Attorney Sylvia Chin-Caplan in place of Ronald

---

[1] This decision has been designated "not to be published," which means I am not directing it to be posted on the United States Court of Federal Claims's website. However, it will nevertheless be posted elsewhere, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Homer, which was granted on November 30, 2016. Petitioners subsequently filed a motion for review of my entitlement decision, which was denied on April 20, 2017. ECF No. 117.

Before Ms. Chin-Caplan was substituted for Mr. Homer as Petitioners' attorney, Petitioners filed a motion requesting an interim award of $296,966.63 (consisting of attorney's fees and costs for the work of Conway Homer, P.C., as well as the work of their original attorney, Mr. Alan Pickert of Terrell Hogan). *See generally* Motion for Interim Attorney's Fees and Costs, dated November 29, 2016 (ECF No. 107). I granted Petitioners' application in part in a decision dated May 9, 2017, finding that the appropriate award of attorney's fees and costs was $275,006.23. ECF No. 120 ("Fees Decision"). Reductions to the requested amount were mostly due to my determination that Petitioners' expert's rate was inappropriately high. Fees Decision at 6. Thus, I found that $350 per hour was a more appropriate rate than $500 per hour for Dr. Huq's work on the matter. *Id.*

Petitioners have now moved for reconsideration of my fees decision, pursuant to Vaccine Rule 10(e). Motion for Reconsideration, dated May 22, 2017 (ECF No. 121) ("Motion"). Petitioners solely request reconsideration of my determination of the amount to be awarded for Dr. Huq's expert costs and his hourly rate. Motion at 3.

In support of their Motion, Petitioners first argue that they did not submit extensive substantiation for Dr. Huq's requested rate of $500 per hour with their initial fees application (despite their burden to do so) because their counsel usually does not spend time providing documentation for expert's fees where the expert has previously received that requested rate in the Program. *Id.* at 4-5. Next, they attempt to substantiate Dr. Huq's hourly rate based on his qualifications, including his multiple fellowships in child neurology and genetics. *Id.* at 6. Because of his specialty in neurogenetics, Petitioners argue that he is a "rarity" in the Vaccine Program and thus deserving of a higher hourly rate. *Id.* at 6-7.

Petitioners also present data collected by The Expert Institute detailing the prevailing rates for medical experts in various fields, which reveals that the national average hourly rate for case review by neurologists is $508 per hour, while the national average hourly rate for a neurologist's expert testimony is $694 per hour. *Id.* at 8. Specifically, Dr. Huq's practicing state of Michigan has an average hourly fee for case review of $564 per hour and medical testimony of $913. *Id.* In light of this information, Petitioners allege that the $500 per hour rate requested for Dr. Huq is reasonable and far below the applicable national and state averages. *Id.* Lastly, Petitioners allege that many experts have received $500 per hour in the Program, and Dr. Huq himself has received $500 per hour in two previous Program cases, and therefore I should award him this rate as well. *Id.* at 10 (citing *Dwornikoski v. Sec'y of Health & Human Servs.*, No. 13-412V, slip op. (Feb. 5, 2016); *Libby/Stone v. Sec'y of Health & Human Servs.*, No. 09-820V, 2016 WL 7670919 (Fed. Cl. Spec. Mstr. Dec. 14, 2016)).

2

## ANALYSIS

Vaccine Rule 10(e) governs motions for reconsideration of a special master's decision. As it provides, "[e]ither party may file a motion for reconsideration of the special master's decision within 21 days after the issuance of the decision . . . ." Vaccine Rule 10(e)(1). Special masters have the discretion to grant a motion for reconsideration if to do so would be in the "interest of justice." Vaccine Rule 10(e)(3). As noted by another special master, "there is a dearth of law interpreting Vaccine Rule 10(e)(3)," beyond the conclusion that (as the rule itself makes clear) it is within the special master's discretion to decide what the "interest of justice" is in a given case. *R.K. v. Sec'y of Health & Human Servs.*, No. 03-632V, 2010 WL 5572074, at \*3 (Fed. Cl. Spec. Mstr. Jan. 10, 2011) (granting reconsideration of decision dismissing case for failure to prosecute). Many decisions assume that the standard for reconsideration is congruent with the "manifest injustice" standard utilized under Rule 59(a) of the Rules of the Court of Federal Claims,[3] which has been defined to be unfairness that is "clearly apparent or obvious." *Amnex, Inc. v. United States*, 52 Fed. Cl. 555, 557 (2002); *see also R.K.*, 2010 WL 5572074, at \*3-5 (citations omitted). At bottom, the "interest of justice" standard is more lenient, emphasizing whether reconsideration would provide a Vaccine Act petitioner a full opportunity to prove her case. *Id.* at \*5.

I find that the interest of justice warrants a reconsideration of my Fees Decision on the grounds set forth by Petitioners. However, I still do not find that Petitioners have put forth sufficient evidence to change my determination that Dr. Huq is not entitled to the very high rate of $500 per hour. First, none of the evidence Petitioners present is new or previously unavailable information that could not have been presented in their fees application. For instance, Dr. Huq's qualifications and their relevance to this matter were known to Petitioners when they selected him as their expert.[4] As Petitioners themselves note in their Motion for Reconsideration, it is Petitioners' burden to substantiate any request for fees and costs. They were given such an opportunity prior to the issuance of my decision, and I found that they did not sufficiently support the requested rate of $500 per hour. Presenting previously available information that could have been submitted in the first instance is not sufficient grounds for reconsideration of my decision.[5]

---

[3] The Court of Federal Claims has interpreted Rules of the United States Court of Federal Claims ("RCFC") 59(a) as setting forth three possible bases for obtaining reconsideration of an order: (a) a change in controlling law; (b) the presence of previously unavailable evidence; or (c) manifest injustice. *System Fuels, Inc. v. United States*, 79 Fed. Cl. 182, 184 (2007).

[4] I also note that I considered Dr. Huq's qualifications as included in his CV and their relevance to the issues in this case when determining Dr. Huq's proper hourly rate. *See* Fees Decision at 7. I weighed them against other factors, including Dr. Huq's experience in the Program *specifically*, which I found to be a more relevant consideration in deciding the appropriate hourly rate.

[5] To the extent counsel wishes to re-litigate the appropriate hourly rate for Dr. Huq in the future, such arguments should be presented at the time the initial fees application is filed.

Second, the decisions Petitioners rely on as supporting Dr. Huq's higher hourly rate are not sufficiently persuasive for me to find he should receive $500 per hour. As an initial matter, decisions of other special masters are not binding. *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 F. App'x 712 (Fed. Cir. 2004). But (and more compelling), the decisions cited – *Dwornikoski*, No. 13-412V, and *Libby/Stone*, 2016 WL 7670919 – do not explicitly set forth the special masters' reasoning for awarding Dr. Huq $500 per hour, or discuss the appropriateness of this rate in depth. While the Respondent did not object to the hourly rate requested by Dr. Huq – in the cited cases or in this particular case – this does not prohibit me from exercising my discretion and making a *sua sponte* inquiry into the appropriateness of the expert's hourly rate. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009). Based on my experience awarding expert fees in the Program and the usual rates awarded to experts who do not frequently appear in the Program, I determined that a lower hourly rate for Dr. Huq's work was appropriate, and these other decisions, while possibly relevant, do not suggest my conclusion was unjust.

Finally, though Petitioners spend considerable time discussing Dr. Huq's qualifications in support of his requested hourly rate, an expert's professional qualifications are not the <u>only</u> considerations in determining an appropriate hourly rate. *See, e.g., Wilcox v. Sec'y of Health & Human Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). Rather, an expert's past experience testifying in the Program can also be considered. *See, e.g., Simon v. Sec'y of Health & Human Servs.*, No. 05-941V, 2008 WL 623833, at *7 (Fed. Cl. Spec. Mstr. Feb. 21, 2008) (determining that an expert deserved a higher hourly rate based on his past experience in the Program, as it made him more efficient in reviewing the case). I weighed all of the relevant considerations and determined that Dr. Huq's relative inexperience (compared to other Program experts) in vaccine cases warranted a lower rate than the $500 per hour – which I find to be more appropriate for experts with extensive experience opining in Program cases.

Despite the above, I am persuaded that the evidence presented in Petitioners' motion compels <u>some</u> increase to the amount I initially awarded. Therefore, I will increase the hourly rate awarded to Dr. Huq to $400 per hour for his work performed on the case, and $200 per hour for his travel time related to this matter (in conformance with his own billing practice of charging half of his hourly rate for travel). This results in a total award of $32,400.00 for Dr. Huq's services (an increase of $4,050.00).

## CONCLUSION

Based on all of the above, I hereby grant in part Petitioners' motion for reconsideration, and adjust the hourly rate awarded to Dr. Huq to $400 per hour. The fees and costs determinations of my first decision otherwise remain intact. This results in a revised total award as follows:

| Contested Sum | Requested | Reduction | Total Awarded |
|---|---|---|---|
| Homer Firm Fees | $222,633.65 | $10,810.40 | $211,823.25 |
| Alan Pickert Fees | $20,117.50 | None | $20,117.50 |
| Litigation-related Expenses | $11,955.59 | None | $11,955.59 |
| Expert Costs | $40,500.00 | $8,100.00 | $32,400.00 |
| Petitioners' Individual Costs | $1,759.89 | None | $1,759.89 |
| Total Requested: $296,966.63 | | Total Reduction: $18,910.40 | Grand Total: $278,056.23 |

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of attorney's fees and costs awards, and based on the foregoing, I hereby **GRANT IN PART** the motion for reconsideration of my Fees Decision, and award **$278,056.23** in fees and costs made payable jointly to Petitioners' counsel Ronald Homer, Esq. and Petitioners. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[6]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.